UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| JACK A. WILSON | ) |
| Plaintiff, | ) Civil No: 12-68-GFVT |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| CARROLL COUNTY, | ) **&** |
| | ) **ORDER** |
| CARROLL COUNTY DETENTION CENTER, | ) |
| MICHAEL HUMPHREY, Individually, and in his Official Capacity as Carroll County Jailer, | ) |
| JENNIFER JOHNSON, Individually, and | ) |
| UNNAMED CARROLL COUNTY DETENTION CENTER MEDICAL DIRECTOR, | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Motion for Summary Judgment filed by Defendant Jennifer Johnson, a state trooper who arrested Plaintiff Jack A. Wilson on October 7, 2011. The other Co-Defendants in this case have filed a separate motion for summary judgment, but the Court will address that motion separately, and will only address Trooper Johnson's motion here. For the reasons explained below, Johnson's motion is GRANTED IN PART and DENIED IN PART.

# I

## A

This litigation is the result of an arrest and detention that occurred in Trimble County, Kentucky, on October 7, 2011. Based on the facts presented by the parties, it appears that Trooper Jennifer Johnson responded to a call that came into the Trimble County Sheriff's Office, reporting that a driver who was possibly intoxicated had gone off the road, crashed into a ditch, and hit a fence. [R. 23-1 (October 7, 2011 Uniform Citation) at 1-2.] According to Johnson, when she encountered Plaintiff Jack Wilson, he was driving erratically on the wrong side of the road with a "dry blank stare" and "never looked up or moved," which caused Johnson to drive off the road into the grass to avoid a head-on collision. [*Id.*] Wilson's truck was damaged "all the way around the vehicle and both the driver's and passenger's side windows were broken out by tree limbs." [*Id.* at 5 (Traffic Collision Rept.)]

When Johnson stopped Wilson, she noted that he was "dazed," expressed confusion as to the day and time, "could not focus or complete thoughts or actions," was having "facial tremors" and appeared drowsy, had constricted pupils and droopy eyelids, and stated that he was hot and had a dry mouth. [*Id.* (Uniform Citation) at 1.] Johnson administered the field sobriety tests, and noted that Wilson failed all of them. [*Id.*] Johnson also noted that Wilson admitted he was taking about ten medications but did not know what they were, and that he exhibited a "lack of cooperation." [*Id.*] Wilson claims that he told Johnson that he was experiencing loss of the use of the left side of his body, but there is no record of that communication in Johnson's report. [R. 31 at 2; R. 31, Ex.

B, Wilson Depo. at 102, 111.[1]] Johnson arrested Wilson on charges of reckless driving, driving on a license that had been suspended for a previous DUI violation, failure to maintain insurance, speeding, failure to register transfer of a motor vehicle, failure to wear a seat belt, license to be in possession, leaving the scene of an accident, and failure to give an oncoming vehicle the right of way. [R. 23-1 (Uniform Citation) at 1-3.]

Johnson then took Wilson to the Carroll County Memorial Hospital to obtain blood and urine samples, both of which eventually came back negative for illegal drugs or alcohol. [R. 23-1 (Uniform Citation) at 1; R. 31-3 (Rep. of Laboratory Exam.).] Wilson was apparently able to get out of the police car and walk into the hospital, where he states that he told the person drawing his blood that he could not feel his left arm, but did not ask for any medical treatment because he did not realize there was anything wrong with him and did he think he needed medical attention. [R. 31, Ex. B, Wilson Depo. at 116-22.] After the tests were completed, Johnson took Wilson to the Carroll County Detention Center where he was held until his release on October 13, 2011. Shortly after Wilson's release, he was diagnosed as having suffered from a Middle Cerebral Artery Stroke. [R. 31-4.] On July 17, 2012, while represented by counsel, Wilson agreed to stipulate probable cause to the arrest in exchange for the dismissal of all charges against him. [R. 23-2; R. 23-3.]

---

[1] Wilson's deposition testimony also illustrates that his memory as to the exact details of this conversation with Johnson is admittedly a bit unclear. One example of Wilson's apparent memory difficulties is when in answer to the question of "[h]ow many times" he told Johnson his left side was dead, he answered that he did not recall and that it was "still like a dream." Wilson Depo. at 111. Another example is when Wilson admitted that "I don't really recall a whole lot about the incident," and that his recollection about the incident "could be, you know, inaccurate because I had a stroke." Wilson Depo. at 115.

**B**

Wilson filed the instant Complaint on October 9, 2012. [R. 1.] The defendants named in the Complaint included Carroll County, Carroll County Detention Center, the Kentucky State Police, and several employees of Carroll County and the State Police, including Trooper Johnson. The Complaint contained five counts, and except for Count Three, the Complaint did not specify which defendant or defendants were implicated in each count but instead simply referred generally to "the Defendants." Thus, the Court will assume that Wilson intended to bring the following claims against Trooper Johnson: 1) A violation of 42 U.S.C. § 1983, as laid out in Count One; 2) intentional infliction of emotional distress ("IIED"), as alleged in Count Two; 3) gross negligence by exhibiting "a total and reckless disregard for" Wilson's common law and constitutional rights, as alleged in Count Four; and 4) negligence by breaching her duty to keep Wilson safe from harm while in her custody, as alleged in Count Five.[2] [R. 1 at 5-7.]

Johnson and the Kentucky State Police initially responded to Wilson's complaint by filing a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). [R. 3.] By Memorandum Opinion & Order, filed May 31, 2013, the Court dismissed all claims against the Kentucky State Police, based on governmental immunity. [R. 19.] The Court also dismissed all claims against Trooper Johnson in her *official* capacity, also based on governmental immunity under the Eleventh Amendment. [*Id*. at 4.] The motion to dismiss was denied, however, with respect to the claims against Johnson in her *individual* capacity, and thus the Court will only address Wilson's claims against Johnson in her individual capacity here.

---

[2] Count Three specifically named Defendants Humphrey, Carroll County, and Carroll County Detention Center, and alleged a failure to train, thus not implicating Defendant Johnson in Count Three.

Johnson has moved for summary judgment on all of the claims against her. In support of her motion, Johnson argues that she is entitled to qualified immunity under the federal standard because Wilson has failed "to articulate a cognizable claim involving an established constitutional right," [R. 23 at 5] and also under Kentucky's qualified immunity standard because she was performing a discretionary function as a public official. [R. 23 at 12.] In the alternative, Johnson argues that Wilson's claims also fail on the merits. [*Id*. at 1.]

## II

### A

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The

movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

**B**

We must begin with the question of qualified immunity[3] because the issue of whether qualified immunity applies is one that should be settled at "the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). In analyzing Wilson's Section 1983 claim, federal qualified immunity "protects government officials from

---

[3] Because the Court has already dismissed all claims against Johnson in her official capacity, it is only necessary to address the claims remaining against Johnson in her individual capacity here.

6

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted).

When evaluating claims of federal qualified immunity, courts generally apply a two-step analysis. First, the court must consider whether "[t]aken in a light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). "The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation marks omitted). Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits district courts and courts of appeal to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

### III

### A

Wilson's primary claim, brought under §1983, concerns a violation of his constitutional rights. Section 1983 does not create substantive rights but, rather,

"provides a remedy for deprivations of rights secured by the Constitutions and laws of the United States. . . ." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811-12, 127 L. Ed. 2d 114 (1994) (Citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (additional citations omitted)).

Wilson's Complaint is arguably a bit vague as to which constitutional rights were implicated. In Count One of his Complaint, Wilson mentions both the Eighth and Fourteenth Amendments to the Constitution, but his only explanation of how his rights were violated is found in ¶ 31. That paragraph reads as follows: "The Defendants' conduct demonstrated a deliberate indifference to the Plaintiff's serious medical needs, and, therefore, imposed cruel and unusual punishment upon the Plaintiff in violation of the Eighth Amendment of the United States Constitution." [R. 1, ¶31.] The rest of Count One concerns the types of damages Wilson alleges he is entitled to as compensation for this violation.

As Johnson has persuasively argued, and as Wilson has conceded, "the Eighth Amendment prohibition against cruel and unusual punishment [ ] only applies to convicted persons," and thus Wilson, who was a pretrial detainee, cannot bring his §1983 claim under the Eighth Amendment. [R. 31 at 3-4.] However, a pretrial detainee's claim

of "deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S. §1983," despite the fact that the Eighth Amendment applies only to convicted prisoners. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Both the Sixth Circuit and the United States Supreme Court have found that the Fourteenth Amendment's Due Process Clause affords pretrial detainees "a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Harbin v. City of Detroit*, 147 F. App'x 566, 569 (6th Cir. 2005) (citing *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003)). Consequently, Wilson's claim concerning lack of medical care is properly brought under the Fourteenth Amendment, but is analyzed under the same standards employed in analyzing Eighth Amendment claims concerning cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 545 (1979); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

Thus, Wilson's reference to the Eighth Amendment is not fatal to his claim. "Where prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment . . . ." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 272 (6th Cir. 2001) (quoting another source). Explained in additional detail, if Wilson is claiming deliberate indifference, he must show that Johnson had "an objectively substantial risk of serious harm," and that she "was subjectively aware of the risk." *Harbin v. City of Detroit*, 147 F. App'x 566, 570 (6th Cir. 2005) (citations omitted). That is, the official must have a culpable state of mind --- the official must know of and disregard an "excessive risk to [detainee] health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Complaint's reliance on the Eighth Amendment, however, apparently caused some confusion for Johnson because she did not present any arguments about the Fourteenth Amendment in her motion for summary judgment, nor did she in any way address the above standard for deliberate indifference. Instead, Johnson's motion for summary judgment argues that the Eighth Amendment cannot apply to Wilson as a pretrial detainee, and then construes Wilson's Complaint as possibly implying claims for unlawful arrest, search, detention, or prosecution under the Fourth Amendment. [*See* R. 23 at 5-11.] Johnson's motion successfully demonstrates that Wilson has not asserted material facts that would support such claims, and that any claim based on the Fourth Amendment would fail. Johnson, however, <u>only</u> discusses the Fourth Amendment, which Wilson never mentioned in his Complaint, and which Wilson has nowhere (to the Court's knowledge) attempted to base his claims upon.

Thus, while the Court agrees with Johnson that Wilson has not adequately demonstrated a violation of his constitutional rights under the Fourth Amendment, Wilson's actual claim is that Johnson exhibited a deliberate indifference to his serious medical needs --- a claim properly addressed under the Fourteenth Amendment. In fact, Wilson's responsive brief concedes that claims based on the Fourth Amendment would likely fail in this situation. Rather, his responsive brief clearly explains that his §1983 claim is based on a denial of medical care in violation of the Fourteenth Amendment. As explained above, this claim is a "clearly established" constitutional right for purposes of §1983, *see Saucier*, 533 U.S. at 201, and the primary inquiry now is whether Johnson had subjective knowledge of Wilson's medical condition but was deliberately indifferent to it. This is admittedly a high standard, and may be difficult for Wilson to ultimately prove,

given the facts presented. However, the main problem for Johnson is that she has nowhere addressed Wilson's actual claim. Because Johnson has never addressed Wilson's reference to the Fourteenth Amendment, nor has she addressed the application of Eighth Amendment analysis to pretrial detainees, nor has she made any arguments concerning her knowledge or her alleged indifference to Wilson's medical condition, Johnson has arguably not even met her initial burden under the summary judgment standard. Moreover, despite Wilson's clarification of his arguments in his responsive brief, Johnson never filed a reply to Wilson's response, nor has she filed any subsequent motions. Thus, there remains a factual dispute as to whether Johnson violated Wilson's Fourteenth Amendment rights.

The parties are again reminded of the standard for summary judgment and the corresponding burdens of each party laid out above.[4] *See* Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 325; *Hall Holding*, 285 F.3d at 424. Here, Trooper Johnson has not met her burden of presenting evidence showing a lack of material fact concerning Wilson's primary claim that she was deliberately indifferent to his serious medical condition. Wilson's Complaint stated in Count One when alleging a violation of §1983, that "the Defendants' conduct demonstrated a deliberate indifference to [his] serious medical needs." [R. 1 at ¶31.] Such an allegation should make it fairly clear that the Fourth Amendment is not at issue in this case.[5] The Supreme Court has rejected a heightened pleading standard for claims brought under §1983, and thus Wilson is

---

[4] Interestingly, Johnson's motion for summary judgment fails to discuss or even mention the legal standard for summary judgment motions. Had she not neglected to address the legal standard, perhaps she would have better understood her legal burden as the moving party.

[5] The Court can understand some initial confusion concerning the substance of Wilson's claims, but once Wilson clarified them in his response brief, Johnson had ample opportunity to address those claims in her reply. Johnson, however, has not done so.

11

required only to meet the usual requirements for "notice" pleading. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). By claiming that Defendants were deliberately indifferent to his medical condition, Wilson clearly put Johnson on notice of his claim against her.[6] Thus, because Johnson's motion for summary judgment does not address Wilson's actual claim against her, the Court cannot find that she has met her burden as the moving party.

Additionally, qualified immunity will not protect Johnson if she has violated Wilson's clearly established constitutional rights. *See Saucier*, 533 U.S. at 201. Because Johnson has only addressed the Fourth Amendment, which is irrelevant in this case, and has not addressed Wilson's claim concerning his Fourteenth Amendment rights, the Court cannot grant summary judgment to Johnson based on qualified immunity. "Summary judgment would not be appropriate if there is a factual dispute . . . involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988).

Moreover, Wilson has presented testimony that creates a genuine factual dispute concerning the merits of his claim as well. To bring a claim for deliberate indifference to his medical condition under §1983, Wilson must show 1) an objective component – that the deprivation involved the existence of a "sufficiently serious" medical need, and 2) that Johnson was subjectively indifferent to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Wilson asserts that his stroke was a serious medical condition, which Johnson has not disputed. Wilson has also alleged that he told Johnson that his left side

---

[6] Indeed, there was more notice of a Fourteenth Amendment claim in Wilson's Complaint than of any possible Fourth Amendment claim, which Johnson for some inexplicable reason chose to address instead.

was dead, and that he could not use his left arm. [R. 31-2, Depo. of Jack Wilson at 102.] The record also reflects that Johnson administered a sobriety test to Wilson, and one could guess that in doing so she might have noticed that he could not use the left side of his body --- if so, then even if Johnson did not know Wilson had had a stroke, she arguably should have sought out some medical treatment for him or tried to ascertain the cause of his paralysis. The Court equally could imagine an argument that would demonstrate that even these facts do not amount to deliberate indifference, but Johnson, as the moving party, is the one who bears the burden of offering evidence that would demonstrate a lack of dispute on this issue.

Thus, because Johnson has not addressed the essence of Wilson's claims against her, either in her motion for summary judgment or in a reply brief, there necessarily exists a factual dispute as to whether Johnson was subjectively aware of the risk to Wilson, and whether her conduct constituted a deliberate indifference to that risk. *See Farmer*, 511 U.S. at 837; *Harbin*, 147 F.App'x at 570. Consequently, the Court cannot grant summary judgment on Wilson's §1983 claim of deliberate indifference when Johnson has not met her burden as the moving party.

**B**

Wilson has also asserted state law claims against Johnson for negligence, gross negligence, and IIED. Johnson has moved for summary judgment on these claims as well, arguing both that qualified immunity should protect her, and that these claims fail on the merits. For Wilson's state law claims, Kentucky law and Kentucky's qualified immunity standard will govern. *Crawford v. Lexington-Fayette Urban County Government*, 2007 WL 101862, at *3 (E.D. Ky. Jan. 10, 2007).

Qualified immunity operates to protect public officers sued in their individual capacities from "damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W. 3d 510, 522 (Ky. 2001). Thus, Kentucky's qualified immunity standard will apply to bar the state charges against Trooper Johnson in her individual capacity if, as a public officer, she was 1) performing a discretionary function, 2) in good faith, and 3) within the scope of her authority as a police officer. *Yanero*, 65 S.W. 3d at 522.

Trooper Johnson responded to a call concerning a possibly intoxicated driver, and when she stopped Wilson, she clearly had reason to arrest him. Regardless of his having suffered a stroke, the fact remains that Wilson was driving on a suspended license, had failed to register his vehicle, did not have insurance, and was not wearing his seatbelt.[7] Additionally, the damage to Wilson's car showed he had just had some sort of accident, he was driving on the wrong side of the road, and he exhibited symptoms common to intoxicated drivers. Wilson has not disputed these facts, nor has he disputed that under the circumstances Johnson acted rationally and within the scope of her authority in arresting him. Because the evidence shows that in detaining Wilson, Johnson was clearly performing a discretionary function within the scope of her authority as a police officer, to overcome qualified immunity, Wilson must show that Johnson did not act in good faith. *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922 (E.D. Ky. 2008) (quoting *Yanero*, 65 S.W.3d at 523). To prove that Johnson did not act in good faith (i.e. she acted in bad faith), Wilson must show a "violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would

---

[7] None of these legal violations are alleged to have resulted from Wilson's stroke.

have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523 (citation omitted).

As an initial matter, the Court notes that neither party has presented specific evidence to support whether or not Johnson acted in good faith. Johnson has only presented evidence that she was acting within her discretion as a police officer, and she has argued that even if she made a mistake as to Wilson's condition, qualified immunity is based on "the notion that public officials will not be held liable for bad guesses in gray areas." *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.*, 286 S.W. 3d 790, 810 (Ky. 2009); [R. 23 at 12-13]. Wilson, for his part, does not dispute that Kentucky's qualified immunity standard bars his state law claims against Johnson. His response brief even admits that "[q]ualified immunity . . . protects a public officer from tort liability," [R. 31 at 8] and all of his state law claims against Johnson are for torts. However, the Court need not reach a decision concerning qualified immunity on Wilson's state law claims because these claims fail on the merits, and because Wilson has not presented evidence to demonstrate that a factual dispute exists concerning them. Because qualified immunity is intended to protect public officers from tort liability in certain contexts, if the tort claims fail on the merits, there is no need to analyze whether qualified immunity applies. *See Yanero*, 65 S.W. 3d at 521-22.

**2**

In analyzing the merits of Wilson's state law claims against Johnson, it should be noted as a threshold matter that the same set of facts cannot give rise to both a claim for

15

negligence and for IIED. *Childers v. Geile*, 367 S.W. 3d 576, 580-81 (Ky. 2012) ("The focus in negligence actions is on physical injury rather than emotional distress. It therefore stands to reason that a plaintiff cannot maintain *both* a negligence claim and an intentional infliction of emotional distress claim based on a single set of facts.") (emphasis in original). Moreover, when the defendant's conduct amounts to one of the traditional torts such as battery or negligence for which emotional distress is allowed, and "was not intended only to cause extreme emotional distress in the victim," the tort of outrage (or IIED) cannot be maintained. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993).

Wilson therefore cannot bring claims against Johnson for both negligence and IIED, but must choose which one to proceed with. Johnson's motion for summary judgment addressed both claims, but Wilson's response to her motion failed to mention anything about negligence or gross negligence. Because Wilson did not meet his burden on these issues, *see Hall Holding*, 285 F.3d at 424, the Court assumes that he has "chosen" to proceed with the IIED claim and conceded the others. Indeed, Wilson does not even claim that Johnson was negligent – nearly all of his arguments concern her allegedly deliberate indifference to his medical needs, which, if deliberate, cannot also be negligent. Because Johnson has met her burden on the issues of negligence and gross negligence, the burden has shifted to Wilson to present evidence showing that a genuine issue of fact exists, and Wilson has not met this burden. *See Hall Holding*, 285 F.3d at 424. Accordingly, the Court does not find any factual dispute on these claims, and must grant summary judgment in favor of Johnson on the claims of negligence and gross negligence.

Wilson's IIED claim also fails because he has not even stated enough facts for the IIED claim to meet the pleading standard under the Federal Rules,[8] let alone presented enough evidence to survive summary judgment once the burden shifted to him as the non-moving party. As Wilson correctly points out, the Kentucky Supreme Court first recognized the tort of IIED in *Craft v. Rice*, 671 S.W. 2d 247 (Ky. 1984). To bring a valid IIED claim, the plaintiff must establish the following four elements: 1) the defendant's conduct must be "intentional or reckless"; 2) the conduct must be "outrageous and intolerable" such that it offends against "generally accepted standards of decency and morality"; 3) there must be "a causal connection" between the defendant's conduct and the victim's emotional distress; and 4) the emotional distress suffered by the plaintiff must be "severe." *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000).

Wilson, however, has failed to present any facts to establish, or even to argue, that Johnson's failure to provide him with medical treatment following his stroke caused him to experience emotional distress, or that the emotional distress was severe. Wilson's arguments, even in relation to his §1983 claim, have focused on his physical injury rather than an emotional one. When discussing the IIED claim in his responsive brief, Wilson merely asserts that "there is clearly a colorable argument" that Johnson's failure to provide him with medical care was "outrageous and intolerable in our society," and if not intentional "was at least reckless." [R. 31 at 9.] Even assuming this is true, Wilson still has not met the third and fourth elements of an IIED claim. He offers only an unsupported assertion that Johnson's conduct "has caused Mr. Wilson to understandable[] suffer from emotional distress," but he does not present evidence

---

[8] The Court notes that the IIED claim likely would not have survived a Rule 12(b)(6) motion to dismiss, but Johnson's previous motion to dismiss did not address the IIED claim, which is why the Court did not previously dismiss it.

demonstrating this assumed causation. As explained above, once the moving party's burden shifts, the nonmoving party "must do more than show there is some metaphysical doubt" about a material fact. *Hall Holding*, 285 F.3d at 424. Bare assertions such as Wilson offers will not suffice – he must present probative evidence" to support his claim, *id*. at 424, and he has "an affirmative duty to direct the court's attention to those specific portions of the record upon which" he seeks to rely in order to create a genuine factual issue for trial. *In re Morris*, 260 F.3d at 655. Thus, Wilson's IIED claim fails on the merits, even apart from the qualified immunity issue. Consequently, because Wilson has not met his burden concerning his state law claims of negligence, gross negligence, or IIED, the Court must grant Johnson summary judgment on those claims.

## IV

For the reasons stated above, summary judgment for the claims brought against Trooper Johnson in her individual capacity is granted in part and denied in part. As numbered in the Complaint, summary judgment for Trooper Johnson is denied on Count One, for violation of §1983 because she did not meet her initial burden concerning the claim based on the Fourteenth Amendment; summary judgment is granted for Trooper Johnson on Count Two, for the intentional infliction of emotional distress because Wilson did not sufficiently establish the claim's required elements nor did he allege facts supporting a genuine dispute; and summary judgment is granted to Johnson on Counts Four and Five, for negligence and gross negligence because Wilson effectively conceded those claims as to Trooper Johnson by failing to address them in any way.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) Defendant Johnson's Motion for Summary Judgment [**R. 23**] is **GRANTED in part** and **DENIED in part** in accordance with the preceding paragraph;

(2) This is a **FINAL** and **APPEALABLE ORDER** and there is no just cause for delay;[9] and

(3) The dates for the Final Pretrial Conference and the Jury Trial as to Defendant Johnson remain as scheduled. [R. 17.]

(4) The Court will enter an appropriate judgment contemporaneously herewith.

This 6th day of March, 2014.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[9] The Court finds that this partial grant of summary judgment should be immediately appealable because of two reasons. *See Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003); *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009). First, the adjudicated and unadjudicated claims have a close relationship: they arise from the same facts, involve the same counsel, and would undoubtedly be dependent on similar evidence. Furthermore, to delay an appeal could obligate the Court to consider the same issues two different times, harming judicial efficiency. Moreover, no obvious factors weigh in favor of delaying the parties from appealing this decision, were they so inclined.