UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JACK A. WILSON | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 12-68-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CARROLL COUNTY, | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CARROLL COUNTY DETENTION | ) | **ORDER** |
| CENTER, | ) | |
| | ) | |
| MICHAEL HUMPHREY, Individually, | ) | |
| and in his Official Capacity as Carroll | ) | |
| County Jailer, | ) | |
| | ) | |
| JENNIFER JOHNSON, Individually, and | ) | |
| | ) | |
| UNNAMED CARROLL COUNTY | ) | |
| DETENTION CENTER MEDICAL | ) | |
| DIRECTOR, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court upon the Motion for Summary Judgment filed by

Defendants Carroll County, Carroll County Detention Center, and Carroll County Jailer

Michael Humphrey.  Because these defendants filed this motion for summary judgment

separately from Defendant Johnson, the Court has chosen to address it separately.  For

the reasons explained below, the motion for summary judgment is GRANTED as to these

defendants.

**I**

**A**

This litigation is the result of an arrest and detention that occurred in Trimble

County, Kentucky on October 7, 2011.[1]  Plaintiff Jack Wilson apparently suffered a

stroke at some point on October 7, 2011.  [R. 29; R. 37-5.]  According to Wilson, he

remembers picking up fallen tree limbs that morning in Campbellsburg, Kentucky, and

loading them into his pickup truck.  [R. 37-8 (Wilson Depo. I, at 95-96.]  At about 4:00

p.m. that same day, Trooper Jennifer Johnson responded to a call that came into the

Trimble County Sheriff's Office, reporting that a driver who was possibly intoxicated had

gone off the road, crashed into a ditch, and hit a fence.  [R. 29-1 (October 7, 2011

Uniform Citation).]  According to Johnson, when she encountered this driver, who turned

out to be Jack Wilson, he was driving erratically on the wrong side of the road with a

"dry blank stare" and "never looked up or moved," which caused Johnson to drive off the

road into the grass to avoid a head-on collision.  [*Id.*]

When Johnson stopped Wilson, she noted that he was "dazed," confused as to

what day and time it was, "could not focus or complete thoughts or actions," was having

"facial tremors" and appeared drowsy, had constricted pupils and droopy eyelids, and

stated that he was hot and had a dry mouth.  [*Id.*]  Johnson administered the field sobriety

tests, and noted that Wilson failed all of them.  [*Id.*]  Johnson also noted that Wilson

admitted he was taking about ten medications but did not know what they were, and that

he exhibited a "lack of cooperation."  [*Id.*]  Wilson claims that he told Johnson that he

was experiencing loss of the use of the left side of his body, but Johnson's report contains

---

[1] The parties differ somewhat in their recitation of the relevant facts, but the Court will focus on the facts
which the parties agree on, and are supported in the record.

no record of that communication. [R. 37-8 at 102, 111.] Johnson arrested Wilson on charges of reckless driving, driving on a license that had been suspended for a previous DUI violation, failure to maintain insurance, speeding, failure to register transfer of a motor vehicle, failure to wear a seat belt, license to be in possession, leaving the scene of an accident, and failure to give an oncoming vehicle the right of way.[2] [R. 29-1 (Uniform Citation).]

Johnson then took Wilson to the Carroll County Memorial Hospital to obtain blood and urine samples, both of which eventually came back negative for illegal drugs or alcohol. [R. 29-1 (Uniform Citation) at 1; R. 37-2 (Rep. of Laboratory Exam).] Consequently, Wilson was not charged with driving under the influence of alcohol. Wilson states that his whole left side felt "dead," but he did not mention this problem to hospital personnel, nor did he ask for any medical attention because he said it "didn't concern me at the time," and because he "didn't really feel like [he] needed medical attention." [R. 37-8 at 121-22, 130.]

After the tests were completed, Johnson took Wilson to the Carroll County Detention Center where he was held until his release on October 13, 2011. Upon arriving at the Center, Johnson filled out the arresting officer questionnaire, in which she advised the booking officer that Wilson took heart medications that made him lethargic, that he could stand on his own, and that she was not aware of any acute medical condition or recently sustained injury that required immediate medical attention. [R. 29-3.] A jail employee then took Wilson's fingerprints, and, according to Wilson, had some trouble doing so because Wilson could not use his left arm or hold it on the table. [R. 37-8 at

---

[2] On July 17, 2012, while represented by counsel, Wilson agreed to stipulate probable cause to the arrest in exchange for the dismissal of all charges against him. [R. 23-2; R. 23-3.]

128.]  Wilson claims that when the employee noticed his inability to lift his arm, he asked

Wilson what happened, saying "did you have a stroke or something?"  [*Id.* at 127.]

Wilson, however, still did not ask for medical attention at that point, nor does he claim

that he told the officer taking his fingerprints about his inability to use or feel his left side

because he "was not concerned" or alarmed about it.  [*See id.* at 128-30.]

    After being fingerprinted, Wilson met with the Detention Center's nurse, Tanya

Abney.  [R. 37-8 at 130.]   Abney completed the Inmate Medical Questions Form for

Wilson, which contained a series of questions about Wilson's health.  [R. 29-4.]  The

form indicates that Wilson told Abney he had heart problems and high blood pressure,

and that he was taking prescription medication on a daily basis.  [*Id.*]  In answer to the

question of whether he had a serious medical condition that might require attention while

he was detained, Wilson answered "yes" and indicated that condition involved "heart

meds" but nothing else.  [*Id.*]  The form also included questions about whether the inmate

needed "immediate medical attention," to which Wilson answered "NO," and whether he

had provided the Center with all the information he wanted them to be aware of while he

was there, to which Wilson answered "Yes."  [*Id.*]  Nurse Abney attempted to contact the

Veterans Administration Hospital to try to find out what medications Wilson needed

because he could not remember what they were, but because it was Columbus Day she

could not reach anyone.  [R. 29-5; R. 37-9 at 136.]  The next day Abney was able to find

out what Wilson's medications were and immediately began to administer them.  [R. 29-

5; R. 29-6; R. 37-9 at 150.]  Wilson apparently[3] told Abney about the deadness in his left

side, left arm, and left leg, and that his "arm had quit working," but she was more

_____

[3] Wilson's deposition testimony indicates that Wilson had some trouble remembering exactly what he told
Abney, and the he did not remember or recall her response when he told her about the deadness in his left
side.  [R. 37-9 at 137-38, 141.]

4

concerned about finding out what medications he was taking. [R. 37-9 at 137-38.] Wilson contends that after he met with Abney, he was given a uniform, but could not dress himself because of his inability to use his left side. According to Wilson, Abney was aware that he could not dress himself, and that a staff member had to assist him. [R. 37 at 3; R. 37-9 at 142-44.]

During the remainder of Wilson's detention, deputy jailers conducted regular cell checks, but the records do not indicate that any employees at the Center observed anything that would have suggested to them that Wilson required medical attention. [R. 29-7.] The cell check records also do not indicate that Wilson asked for medical attention. [*Id.*] Wilson, however, testified in his deposition that on several occasions he told various staff members that his left arm and leg were not working properly. [R. 37-9 at 154-55.] A deputy apparently escorted Wilson to Nurse Abney's office on a regular basis to receive his medications, and on at least one such occasion, the deputy observed that Wilson could not put his shoe on his left foot, and that his left shoe frequently fell off while he was walking down the hall because his foot was numb. [R. 37-9 at 147-48, 154-56.] Wilson claims that he told the deputy that his left arm and leg were not working, and that the deputy made fun of him instead of recognizing his stroke symptoms and obtaining medical assistance. [*Id.*] Wilson admits that he did not tell anyone else, including Nurse Abney, about the numbness in his left side, and that he never asked to go to a hospital or to receive medical attention for the problems he was experiencing with the left side of his body. [*Id.* at 152-58.] Wilson was released on October 13, 2011, and did not receive any treatment for his stroke while at the Center. Three days after his

release, Wilson was admitted to the VA hospital for treatment of the weakness in his left side, and the doctors there informed him that he had recently had a stroke.  [R. 37-5.]

**B**

Wilson filed suit in this Court on October 9, 2012.  [R. 1.]  The defendants initially named in the Complaint were Carroll County, Carroll County Detention Center, Carroll County Jailer Michael Humphrey in his individual and official capacity, Tanya Abney, an unnamed Carroll County Detention Center Medical Director, the Kentucky State Police, and Trooper Johnson.  The Complaint contained five counts.  Count One alleges a violation of 42 U.S.C. § 1983 in general, and references the Eighth and Fourteenth Amendments to the Constitution in particular.  Count Two is a state law claim for the intentional infliction of emotional distress ("IIED").  Count Three alleges a failure to train on the part of the Carroll County Defendants, which is connected to the alleged constitutional violations.  Counts Four and Five allege state law claims for gross negligence and negligence respectively, alleging that the Defendants violated their duties to keep Wilson safe while in their custody, to provide him with basic medical care, and to properly supervise, monitor and evaluate him.  Wilson alleges that these violations constitute a reckless disregard for his rights and are worthy of punitive damages.  Except for Count Three, the Complaint refers generally to "the Defendants" and does not specify which defendants were implicated in each count.  Defendants Carroll County, Carroll County Detention Center, and Carroll County Jailer Michael Humphrey (collectively

"Carroll County Defendants") have filed the instant motion, requesting summary judgment on all counts against them.[4]

## II

### A

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church,* 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.,* 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.,* 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed.

---

[4] The claims against Nurse Abney have already been settled, the claims against the state police have been dismissed, and Trooper Johnson is separately represented and has filed a separate motion for summary judgment, which the Court has considered separately.

R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**B**

We must begin with the question of immunity, which the Carroll County Defendants pled as an affirmative defense, because the issue of whether qualified immunity applies is one that should be settled at "the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Federal qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted).

When evaluating claims of federal qualified immunity, courts generally apply a two-step analysis. First, the court must consider whether "[t]aken in a light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). "The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation marks omitted). Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

## C

Wilson's primary claim, brought under §1983, concerns a violation of his constitutional rights. Section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States. . . ." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting

under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271, (1994) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989) (additional citations omitted)).

As explained above, for qualified immunity to apply in this case, Wilson must have alleged the violation of a clearly established constitutional right. *See Saucier*, 533 U.S. at 201. Moreover, Wilson must also identify the violation of a specific constitutional right in order to bring a §1983 claim. Thus, a brief explanation of which constitutional rights are at issue is warranted. Wilson's Complaint was arguably a bit vague as to which constitutional rights were implicated. Count One of the Complaint mentions both the Eighth and Fourteenth Amendments to the Constitution, but Wilson's only explanation of how these rights were violated is found in ¶ 31. That paragraph reads as follows: "The Defendants' conduct demonstrated a deliberate indifference to the Plaintiff's serious medical needs, and, therefore, imposed cruel and unusual punishment upon the Plaintiff in violation of the Eighth Amendment of the United States Constitution." [R. 1, ¶31.] The rest of Count One concerns the types of damages Wilson alleges he is entitled to as compensation for this violation.

As the Carroll County Defendants have properly argued, and as Wilson has effectively conceded, "the Eighth Amendment does not apply to pretrial detainees," such as Wilson. [R. 29 at 7; R. 37 at 6.] Despite that fact, however, a pretrial detainee's claim of "deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S. §1983." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Both the Sixth Circuit and the United States Supreme Court have found that the

Fourteenth Amendment's Due Process Clause affords pretrial detainees "a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Harbin v. City of Detroit*, 147 F. App'x 566, 569 (6th Cir. 2005) (citing *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003)). Consequently, Wilson's claim concerning lack of medical care is properly brought under the Fourteenth Amendment, but is analyzed under the same standards employed in evaluating Eighth Amendment claims concerning cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 545 (1979); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

Thus, Wilson's reference to the Eighth Amendment is not fatal to his §1983 claim. Rather, whether the claim is brought under the Eighth or Fourteenth Amendment, "[w]here prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment . . . ." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 272 (6th Cir. 2001) (quoting another source).

### III

### A

The federal charges related to the §1983 claim brought against the Carroll County Detention Center and against Humphrey in his official capacity, are functionally equivalent to charges against Carroll County. First, the Carroll County Detention Center is not an entity that can be sued because municipal departments such as jails, sheriff's departments, and detention centers "are not 'persons' subject to suit under [§1983]." *Sours v. Big Sandy Regional Jail Authority*, 946 F. Supp. 2d 678, 688 (E.D. Ky. 2013) (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)); *see also Bush v. Carter*

*Cnty. Det. Center*, 2011 WL 3880468, at *1 n.1 (E.D. Ky. Aug. 29, 2011) (construing

"the claims against Carter County Detention Center as against Carter County itself"

because jails are not subject to suit under §1983). Carroll County Detention Center is a

subunit of the county, and thus Wilson's claims against the Detention Center should be

construed as claims against Carroll County. *See Smith v. Franklin Cnty*., 227 F. Supp. 2d

667, 674-75 (E.D. Ky. 2002) (agreeing that a county jail and correctional complex was

not a legal entity capable of being sued).

Second, "[i]ndividuals sued in their official capacities stand in the shoes of the

entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). This is because a plaintiff seeking to

"recover on a damages judgment in an official-capacity suit must look to the government

entity itself" to pay the damages. *Graham*, 473 U.S. at 166. This principle applies to the

§1983 claims brought against Humphrey in his official capacity as Carroll County Jailer.

*See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual

in his official capacity is the equivalent of a suit against the governmental entity.").

Because Carroll County is the true defendant and the proper party against which to bring

suit, all federal claims against Carroll County Detention Center and against Humphrey in

his official capacity, are dismissed. *See Clark v. Kentucky*, 229 F. Supp. 2d 718, 721-22

(E.D. Ky. 2002) (dismissing official capacity claims).

**B**

Qualified immunity also bars Wilson's claims against Carroll County. While

counties are not considered akin to the State for purposes of Eleventh Amendment

immunity, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989), counties

and county officials can be held liable under §1983 only where the allegedly unconstitutional action is a result of an unconstitutional "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the local governing body's] officers" or through an informally adopted governmental custom. *Johnson v. Hardin Cnty., Ky.,* 908 F.2d 1280, 1285 (6th Cir. 1990) (quoting *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 690–91 (1978) (internal quotation marks omitted)). Local government entities such as counties also cannot be liable under § 1983 on a theory of *respondeat superior* liability. *See Monell*, 436 U.S. at 691. Instead, counties can only be liable under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. Thus, Wilson must establish both that his constitutional rights were violated *and* that a policy or custom of Carroll County was the "moving force" behind the violation of his rights. *Bozung v. Rawson*, 439 Fed. Appx. 513, 521 (6th Cir. 2011) (quoting *Miller v. Sanilac Cnty*., 606 F.3d 240, 254-55 (6th Cir. 2010)).

**1**

First, Wilson fails to meet the standard for showing that his constitutional rights were violated at all. To succeed on a claim of deliberate indifference to medical needs, Wilson must show first that he had "an objectively substantial risk of serious harm," and second, that the jail or county officials were "subjectively aware of the risk." *Harbin v. City of Detroit*, 147 F. App'x 566, 570 (6th Cir. 2005) (citations omitted). That is, the official must have a culpable state of mind --- the official must know of and disregard an "excessive risk to [detainee] health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Objective awareness can be established by showing "the *effect* of [a] delay in treatment . . . . Specifically, a pretrial detainee who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment . . . ." *Vaughn*, 18 F. App'x at 274 (quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)). Here, the parties do not dispute that having a stroke was a serious medical condition, but Wilson has not actually submitted any medical evidence establishing how the delay in receiving treatment negatively affected him. A detainee's subjective feelings of pain, "if sufficiently egregious," coupled with a denial of medical care can serve as evidence of an objective injury. *Vaughn*, 18 F. App'x at 275. The medical needs, however, must be "so patent as to make lay persons . . . remiss in failing to arrange for immediate medical attention." *Id.* (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). Thus, Wilson would need to show that his inability to use his left side was so obviously a sign of a stroke that any lay person would be "remiss in failing to arrange for immediate medical attention," which is essentially what Wilson has tried to argue. *Id.*

However, even when construing the facts in Wilson's favor, as the Court is required to do, assuming that Wilson's symptoms were obvious to a lay person, and that the delay in treatment created an objectively substantial risk of serious harm,[5] Wilson still has not presented evidence showing that any official involved was *subjectively* aware

---

[5] The Court could assume that this first requirement has been met since the parties do not appear to dispute that there was a substantial risk of harm in the delay of treatment for stroke victims.

of the risk or had a *culpable* state of mind in failing to obtain medical treatment for him.[6] *See Farmer*, 511 U.S. at 837. This subjective element is where Wilson's argument ultimately fails because apart from any evidence of deliberate wrongdoing, Wilson cannot meet his burden of establishing that his constitutional rights were violated.

**2**

Moreover, even if the Court were to concede that Wilson's rights had been violated, Wilson still could not establish a §1983 claim against Carroll County because he has failed to identify any policy or custom that caused any employee of Carroll County to allegedly violate Wilson's constitutional rights. The Detention Center nurse asked Wilson multiple questions about his medical needs, Wilson responded that he did not have any serious needs apart from his medications for his heart condition, and Wilson did not ask anyone for medical assistance. Even if the nurse or various other employees were somehow negligent or careless in overlooking Wilson's stroke symptoms, that does not amount to a policy or custom that could result in liability for Carroll County.[7]

Wilson's only attempt at establishing the existence of an unconstitutional policy is his contention that inadequate supervision or training can be equivalent to a municipal policy for §1983 purposes. [R. 37 at 11.] Wilson contends that allowing his stroke symptoms to go untreated must necessarily reflect a failure to supervise and/or train the employees at the Carroll County Detention Center, and thus Carroll County and Jailer Humphrey must be at fault. This argument is connected to Count Three of Wilson's

---

[6] There is also no evidence that Wilson ever submitted a medical request form or even verbally requested medical assistance. Had he done so, and had an employee deliberately disregarded the request, that might show evidence of deliberate indifference, but Wilson has not even contended that he requested medical assistance for the numbness in his left side.

[7] And, as noted previously, the actual individuals who may have noticed Wilson's stroke symptoms either are not parties to this lawsuit at all, or else Wilson has already settled his claims against them.

Complaint which alleges that Humphrey and Carroll County were "deliberately indifferent to their employees' and officers' need for training about interactions with prisoners." Wilson assumes that because employees at the Detention Center either ignored or did not realize that his symptoms were indicative of a stroke, Carroll County and Humphrey must have deliberately or recklessly failed to train them. Wilson is correct that a county's failure to train may in certain instances amount to deliberate indifference toward a prisoner's serious medical needs, *see City of Canton v. Harris*, 489 U.S. 378, 392 (1978), but the plaintiff must provide actual proof that the county "knows inmates face a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it." *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 900 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 847) (internal quotation marks omitted). Here, Wilson has not provided such proof. Instead, Wilson merely asserts that a conclusion of deliberate indifference can be inferred from the County's decision not to provide training on a topic that could have severe consequences. [R. 37 at 11.]

In order to prevail on a claim for failure to train, "the plaintiff must prove . . . that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is closely related to or actually caused the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (internal quotations omitted) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989); *City of Canton*, 489 U.S. at 388); *see also Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Under the first factor, "the court is to examine particular deficiencies in the municipality's training program. . . , and not simply 'rubber stamp' a department's training program because it appears lengthy or

it appears to cover many topics." *Lee v. Metro. Gov't of Nashville and Davidson Cnty.*, 596 F.Supp.2d 1101, 1124 n.15 (M.D. Tenn. 2009) (citing *City of Canton* and *Ellis*).  In regard to the second factor, the Sixth Circuit has identified two situations in which finding of deliberate indifference is appropriate.  *Id.* at 1124.  One "is where the city fails to act in response to the repeated complaints of constitutional violations by its officers." *Cherrington v. Skeeter,* 344 F.3d 631, 646 (6th Cir. 2003).  The second situation involves "a failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction."  *Id.* (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)).  Finally, to determine whether inadequate training was "closely related to" or "actually caused" the ultimate constitutional injury, the Supreme Court in *City of Canton* considered whether "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect."  *City of Canton*, 489 U.S. at 391.

Here, Wilson has not referenced these standards nor provided evidence to support any of these elements.  Wilson has not pointed to a particular deficiency in the training of Carroll County employees or the Detention Center employees.  The standard of §1983 liability for a county or city "will not be satisfied by merely alleging that the existing training program for a class of employees . . . represents a policy for which the city is responsible."  *City of Canton*, 489 U.S. at 389.  To meet his burden, Wilson must provide the Court with evidence of an actual deficiency in the training program, and must show the Court that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the failure to include such training amounts to deliberate indifference on the part of the city or county's policy

makers. *Id.* at 390. At most, Wilson merely asserts that two or three employees at the Detention Center made a mistake, or were possibly negligent, but he says nothing about the Center's overall training program. The negligent administration of a sound program, or the mistakes or even negligence of individual officers do not demonstrate the inadequacy of the training program or the legal basis for holding the county liable. *Id.* at 391. Because Wilson has failed to demonstrate that Carroll County's policies were "objectively inadequate, much less that the County was deliberately indifferent to the obvious inadequacy of those policies," the Court will reject Wilson's theory regarding a failure to train and will enter judgment in favor of Carroll County on Counts One and Three. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).

## C

Wilson's federal claims against Humphrey in his individual capacity also fail. Supreme Court precedent is clear that a government official can only be personally liable for a §1983 claim if he personally "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Otherwise stated, "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller*, 408 F.3d at 817 n.3 (citing *Taylor v. Mich. Dept. of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995)). When an official is not directly involved, as is the case here, a plaintiff alleging liability for failure to supervise his subordinates must "[a]t a minimum . . . show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (citation

omitted).  Personal liability for Humphrey "cannot be based solely on the right to control employees."  *Id.*

Wilson has not shown that Humphrey had any personal involvement in the activities giving rise to this action.  As the moving party, Humphrey has presented evidence that he was not personally involved in Wilson's detention, had no personal interaction with Wilson, played no role in his intake, and had no knowledge whatsoever of Wilson's medical condition.  The burden has thus shifted to Wilson, who has failed to present any evidence showing that Humphrey had any personal involvement or personal knowledge of Wilson's condition, let alone that Humphrey was deliberately indifferent to his medical needs.  Indeed, the only time Wilson's responsive brief even mentions Humphrey by name is in connection with the allegation that Humphrey failed to properly supervise employees.  [*See* R. 37 at 10-12.]  As explained above, however, liability for §1983 violations "cannot be imposed under a theory of *respondeat superior*," and "proof of personal involvement is required" instead.  *Miller*, 408 F.3d at 817 n.3.  Wilson has presented no proof of Humphrey's personal involvement with Wilson's detention or medical condition.  Accordingly, the Court finds that Humphrey is entitled to qualified immunity for any §1983 claims brought against him in his individual capacity.

Moreover, precedent is clear that Wilson cannot succeed in a §1983 claim for failure to provide medical treatment unless he can establish that Humphrey acted with "deliberate indifference" to his needs.  *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "Deliberate indifference is not mere negligence."  *Id.*  Deliberate indifference requires that the defendant subjectively knew of the risk and deliberately chose to disregard it.  *Id.*  Wilson

has not shown that anyone involved deliberately disregarded his stroke symptoms, least of all Defendant Humphrey who never interacted with Wilson during his detention and thus cannot be said to have deliberately and subjectively ignored Wilson's medical needs. The only people who Wilson mentions as having anything close to personal knowledge of his medical condition are Nurse Abney, with whom he has already settled, and the deputies at the Detention Center, who are not parties to this suit.

## D

The Court will now address Wilson's state law claims. As an initial matter, the only state law claim which Wilson attempted to rebut in his responsive brief is his claim for IIED. Wilson apparently no longer disputes the other claims for negligence and gross negligence. Nevertheless, for the sake of clarity, the Court will consider the Defendants' arguments concerning immunity and explain its reasoning on these claims.

## 1

Summary Judgment is entered for Carroll County on Counts Two, Four, and Five due to Kentucky's immunity laws. Because these claims are premised on Kentucky law, "state rules of immunity govern," even when in federal court. *Crawford v. Lexington-Fayette Urban County Government*, 2007 WL 101862, at *4 (E.D. Ky. January 10, 2007) (internal quotations omitted). Kentucky counties are "political subdivision[s] of the state," and as such, they are " 'cloaked' with sovereign or governmental immunity" under Kentucky law. *Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) (citing *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W. 3d 128 (Ky. 2004)). Moreover, the sovereign immunity of Kentucky counties is only waived by decision of the Kentucky General Assembly, not by court decree. *Crawford,* 2007 WL 101862, at *1 (quoting and

citing other sources).  As applied to the case at hand, "immunity with respect to the care and keeping of inmates" has not been waived, *Webb v. Jessamine Cnty. Fiscal Court*, 802 F. Supp. 2d 870, 887 (E.D. Ky. 2011), and Wilson has not cited any law which would abrogate Carroll County's sovereign immunity concerning any of his state law claims either.  *See Ashby v. City of Louisville*, 841 S.W.2d 184, 186 (Ky. Ct. App. 1992) (quoting and citing other sources); *see also Mellencamp v. Louisville/Jefferson Cnty. Metro Gov't*, 2009 WL 1034216, at *6 (W.D. Ky. Apr. 16, 2009) (explaining that claims for assault, battery, intentional infliction of emotional distress, negligence, and gross negligence cannot be brought against the county because of state immunity). Consequently, Wilson's state law claims against Carroll County are barred by Kentucky law, and the County's motion for summary judgment is granted.

## 2

Whatever immunity is enjoyed by Kentucky counties will also shield Carroll County Detention Center and Humphrey in his official capacity.  *Webb*, 802 F. Supp. 2d at 887; *see also Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 169 (Ky. 2003) (holding that persons sued in their official capacities as granted the same immunity that Kentucky law grants to the government or agency the person represents).  Moreover, Wilson has not disputed that the Detention Center  or Humphrey in his official capacity are entitled to sovereign immunity from liability on his state law claims.  Because Wilson has not met his burden by providing any evidence on these claims, there is no genuine dispute and the Court will grant summary judgment to these Defendants on Counts Two, Four, and Five.

The only remaining state law claims are against Humphrey in his individual capacity. Because Wilson has not disputed that Humphrey is entitled to summary judgment on the state law claims for negligence and gross negligence, Wilson has apparently conceded these claims, and the Court will grant summary judgment in favor of Humphrey on Counts Four and Five. As for Wilson's IIED claim in Count Two, even apart from the issue of qualified immunity, the claim fails on the merits. First, when a defendant's conduct amounts to one of the traditional torts such as battery or negligence for which emotional distress is allowed, and "was not intended only to cause extreme emotional distress in the victim," the tort of outrage (or IIED) cannot be maintained. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993).

Second, Wilson has not presented sufficient evidence concerning the elements of an IIED claim in order for it to survive summary judgment once the burden shifted to him as the non-moving party. To bring a valid IIED claim, the plaintiff must establish the following four elements: 1) the defendant's conduct must be "intentional or reckless"; 2) the conduct must be "outrageous and intolerable" such that it offends against "generally accepted standards of decency and morality"; 3) there must be "a causal connection" between the defendant's conduct and the victim's emotional distress; and 4) the emotional distress suffered by the plaintiff must be "severe." *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000). Wilson, however, has failed to present any facts to support that Humphrey intentionally or recklessly failed to provide him with medical treatment following his stroke. As explained previously, Humphrey was not even present or personally involved when Wilson was detained. Even if Wilson intends this claim to

encompass an alleged failure on Humphrey's part to properly train or supervise his employees, Wilson has presented no evidence that this alleged failure caused him to experience emotional distress, or that his emotional distress was severe. Moreover, there is no evidence that the failure to provide Wilson with medical treatment was done for the sole purpose of causing him emotional distress, a showing that is necessary to bring an IIED claim in Kentucky. *See Rigazio*, 875 S.W. 2d at 295.

As explained above, once the moving party's burden shifts, the nonmoving party "must do more than show there is some metaphysical doubt" about a material fact. *Hall Holding*, 285 F.3d at 424. Bare assertions such as Wilson offers will not suffice – he must present probative evidence" to support his claim, *id.* at 424, and he has "an affirmative duty to direct the court's attention to those specific portions of the record upon which" he seeks to rely in order to create a genuine factual issue for trial. *In re Morris*, 260 F.3d at 655. Consequently, because Wilson has not met his burden concerning his state law claims against Humphrey in his individual capacity, the Court must grant Humphrey summary judgment on Counts Two, Four, and Five.

### E

Finally, the Court notes that the docket sheet still reflects the "Unnamed Medical Director" as a defendant in this case, but none of the parties have ever mentioned him/her. Accordingly, Plaintiff Wilson is directed to show cause as to why this unnamed defendant should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and LR 41.1 before the Final Pretrial Conference in this case, currently scheduled for March 17, 2014.

**IV**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Defendants' Motion for Summary Judgment [**R. 29**] is **GRANTED** for all claims asserted against Carroll County Detention Center;

 (2)     Defendants' Motion for Summary Judgment [**R. 29**] is **GRANTED** for all claims asserted against Carroll County;

(3)     Defendants' Motion for Summary Judgment [**R. 29**] is **GRANTED** for all claims asserted against Michael Humphrey, in both his official capacity as Carroll County Jailer and in his individual capacity;

(4)     **Defendants Carroll County**, **Carroll County Detention Center**, and **Michael Humphrey**, in his official capacity as Carroll County Jailer, **and** in his individual capacity, are **DISMISSED** from this action;

(5)     Plaintiff Wilson is directed to **SHOW CAUSE** as to why the Unnamed Carroll County Detention Center Medical Director should not be dismissed from this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and LR 41.1 before the Final Pretrial Conference in this case, currently scheduled for March 17, 2014; and

(6)     This is a **FINAL** and **APPEALABLE ORDER** and there is no just cause for delay.

(7)     The Court will enter an appropriate judgment contemporaneously herewith.

This 6th day of March, 2014.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**