UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| JACK A. WILSON, | ) |
| Plaintiff, | ) Civil No: 12-68-GFVT |
| V. | ) |
| JENNIFER JOHNSON, | ) **MEMORANDUM OPINION** |
| | ) **&** |
| Defendant. | ) **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Motion for Summary Judgment filed by Defendant Jennifer Johnson, the sole remaining Defendant in this case. For the reasons explained below, the motion for summary judgment is GRANTED.

**I**

**A**

This litigation is the result of an arrest and detention that occurred in Trimble County, Kentucky, on October 7, 2011. Plaintiff Jack Wilson apparently suffered a stroke at some point on that day. [R. 29; R. 37-5.] According to Wilson, he remembers picking up fallen tree limbs that morning in Campbellsburg, Kentucky, and loading them into his pickup truck. [R. 37-8 (Wilson Depo. I, at 95-96.] At about 4:00 p.m., Trooper Jennifer Johnson responded to a call that came into the Trimble County Sheriff's Office, reporting that a driver who was possibly intoxicated had gone off the road, crashed into a ditch, and hit a fence. [R. 29-1 (October 7, 2011 Uniform Citation).] According to

Johnson, when she encountered this driver, who turned out to be Jack Wilson, he was driving erratically on the wrong side of the road with a "dry blank stare" and "never looked up or moved," which caused Johnson to drive off the road into the grass to avoid a head-on collision. [*Id*.]

When Johnson stopped Wilson, she noted that he was "dazed," confused as to what day and time it was, "could not focus or complete thoughts or actions," was having "facial tremors" and appeared drowsy, had constricted pupils and droopy eyelids, and stated that he was hot and had a dry mouth. [*Id*.] Johnson administered the field sobriety tests, and noted that Wilson failed all of them. [*Id*.] Johnson also noted that Wilson admitted he was taking about ten medications but did not know what they were, and that he exhibited a "lack of cooperation." [*Id*.] Wilson claims that he told Johnson that he was experiencing loss of the use of the left side of his body, but Johnson's report contains no record of that communication. [R. 37-8 at 102, 111; R. 31, Ex. B, Wilson Depo. at 102, 111.[1]] Johnson arrested Wilson on charges of reckless driving, driving on a license that had been suspended for a previous DUI violation, failure to maintain insurance, speeding, failure to register transfer of a motor vehicle, failure to wear a seat belt, leaving the scene of an accident, and failure to give an oncoming vehicle the right of way.[2] [R. 29-1 (Uniform Citation).]

---

[1] Wilson's deposition testimony also illustrates that his memory as to the exact details of this conversation with Johnson is admittedly a bit unclear. One example of Wilson's apparent memory difficulties is when in answer to the question of "[h]ow many times" he told Johnson his left side was dead, he answered that he did not recall and that it was "still like a dream." Wilson Depo. at 111. Another example is when Wilson admitted that "I don't really recall a whole lot about the incident," and that his recollection about the incident "could be, you know, inaccurate because I had a stroke." Wilson Depo. at 115.

[2] On July 17, 2012, while represented by counsel, Wilson agreed to stipulate probable cause to the arrest in exchange for the dismissal of all charges against him. [R. 23-2; R. 23-3.]

Johnson then took Wilson to the Carroll County Memorial Hospital to obtain blood and urine samples, both of which eventually came back negative for illegal drugs or alcohol. [R. 29-1 (Uniform Citation) at 1; R. 37-2 (Rep. of Laboratory Exam).] Consequently, Wilson was not charged with driving under the influence of alcohol. Wilson states that his whole left side felt "dead," but he did not mention this problem to hospital personnel, nor did he ask for any medical attention because he said it "didn't concern me at the time," and because he "didn't really feel like [he] needed medical attention." [R. 37-8 (Wilson Depo.) at 121-22, 130.]

After the tests were completed, Johnson took Wilson to the Carroll County Detention Center where he was held until his release on October 13, 2011. Upon arriving at the Center, Johnson filled out the arresting officer questionnaire, in which she advised the booking officer that Wilson took heart medications that made him lethargic, that he could stand on his own, and that she was not aware of any acute medical condition or recently sustained injury that required immediate medical attention. [R. 29-3.] Wilson did not request medical attention during the booking process or when he met with the Detention Center's nurse, Tanya Abney, to complete the Inmate Medical Questions Form. [R. 29-4; R. 37-8 at 130.] Wilson was released on October 13, 2011, without having received medical treatment for his stroke while at the Detention Center. Three days after his release, Wilson was admitted to the Veterans Administration hospital for treatment of the weakness in his left side, and the doctors there informed him that he had recently had a stroke. [R. 37-5.] On July 17, 2012, while represented by counsel, Wilson agreed to stipulate probable cause to Johnson's arrest in exchange for the dismissal of all charges against him. [R. 23-2; R. 23-3.]

**B**

Wilson filed suit in this Court on October 9, 2012. [R. 1.] The defendants initially named in the Complaint were Carroll County, Carroll County Detention Center, Carroll County Jailer Michael Humphrey in his individual and official capacity, Tanya Abney, an unnamed Carroll County Detention Center Medical Director, the Kentucky State Police, and Trooper Jennifer Johnson. This Court granted summary judgment in favor of the other defendants on March 6, 2014, [R. 41] except for the Unnamed Medical Director who Wilson later agreed to dismiss from the case. [R. 55.] Also on March 6, 2014, this Court granted summary judgment in favor of Johnson concerning Wilson's state law claims, but denied summary judgment concerning Wilson's claim brought under U.S.C. § 1983 because Johnson had not met her initial burden on that claim. Shortly afterward, Johnson filed a motion for reconsideration, [R. 43] which the Court construed as a motion for summary judgment because in that motion Johnson's counsel addressed for the first time the substance of Wilson's Fourteenth Amendment claims against Johnson. The construed motion for summary judgment is now ripe for review.

**II**

**A**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v.*

*Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). However, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific

portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**B**

We begin with the question of immunity, which Johnson pled as an affirmative defense, because the issue of whether qualified immunity applies is one that should be settled at "the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Federal qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation marks omitted).

When evaluating claims of federal qualified immunity, courts generally apply a two-step analysis. First, the court must consider whether "[t]aken in a light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). "The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation marks omitted). Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

## C

At this juncture, the sole remaining issue before the Court is Wilson's Fourteenth Amendment claim for deliberate indifference brought against Johnson pursuant to 42 U.S.C. § 1983. Wilson alleges that Johnson violated his constitutional rights to humane confinement under color of state law. Johnson asserts that she is entitled to the defense of qualified immunity because she was performing a discretionary function and because Wilson has failed to establish that his constitutional rights were actually violated.

For qualified immunity to apply to Johnson's situation, Wilson must allege facts which, if substantiated, indicate the violation of a clearly established constitutional right. *See Saucier*, 533 U.S. at 201. Wilson's remaining claim against Trooper Johnson concerns deliberate indifference to his need for medical attention following his stroke – a claim that, although properly brought under the Fourteenth Amendment, is analyzed under the same standards used in evaluating Eighth Amendment claims concerning cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 545 (1979); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). In other words, the due process clause in the Fourteenth Amendment has been found to give pretrial detainees "a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Harbin v. City of Detroit*, 147 F. App'x 566, 569 (6th Cir. 2005) (citing *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003)). Wilson alleges that Johnson knew or should have known that his symptoms were indicative of his having recently suffered a stroke, and that she was indifferent to his need for medical attention by failing

7

to provide him "with access to any form of medical care at the time of his arrest and detention." [R. 57 at 4.] If substantiated, such allegations could amount to the clearly established constitutional right to be free from cruel and unusual punishment in the form of denying Wilson adequate medical treatment in the face of a serious medical need. *See Vaughn v. City of Lebanon*, 18 F. App'x 252, 272 (6th Cir. 2001).

Next, to determine if Johnson is entitled to qualified immunity, the Court must determine whether her actions violated Wilson's right to receive adequate medical treatment. To prevail on a deliberate indifference claim, Wilson must satisfy both an objective and a subjective requirement. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). First, Wilson must show that the alleged deprivation is objectively "sufficiently serious"; and second, Wilson must show that Johnson subjectively had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting other sources). For the objective component, Wilson must demonstrate that his medical need was "so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess v. Fisher*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). To satisfy the subjective component concerning whether Johnson had a "culpable state of mind," Wilson must show that Johnson had actual "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." *Id*. (quoting *Blackmore*, 390 F.3d at 896). In other words, Johnson must have known of the "excessive risk to [Wilson's] health or safety" by not securing adequate medical treatment and she must have chosen to disregard that risk. *Farmer*, 511 U.S. at 837.

Because Wilson has not satisfied either component, Johnson is entitled to qualified immunity.

For the objective component, the parties here do not appear to dispute that Wilson suffered a stroke shortly before Johnson arrested him or that a stroke is a serious medical condition. However, Wilson has not entirely demonstrated that his need was patently obvious even to a lay person. *See Burgess*, 735 F.3d at 476. Wilson argues that the symptoms Johnson listed in her report to describe Wilson's condition when she stopped him — "sluggish," "dazed," "could not focus or complete thoughts or actions," confused, "facial tremors," "constricted pupils," "drymouth," "droopy eyelids," "drowsy," etc. . . [R. 57-1 (Uniform Citation)] were, according to Wilson, "all telltale signs of a stroke," and thus it was patently obvious that he needed medical attention. [R. 57 at 5.] Johnson, however, argues that these symptoms were also equally indicative of someone who was under the influence of drugs or alcohol, or even of someone who had just suffered a car crash such as the kind that gave rise to the call Johnson received and the reason she stopped Wilson in the first place. [R. 43 at 3.] Moreover, trained medical personnel interacted with Wilson at the hospital where Johnson took him to have his blood drawn, and also at the detention center upon booking, and none of them recognized the supposedly "telltale" signs of a stroke. [R. 43 at 3; R. 58 at 4-5.] These facts would seem to negate the obviousness of Wilson's medical need.

In particular, Wilson has not satisfied the subjective requirement of a deliberate indifference claim. For this component, something "more than mere negligence," although "something less than specific intent to harm," is required. *Burgess*, 735 F.3d at 476 (citing *Farmer*, 511 U.S. at 834). "[T]he official must both be aware of facts from

9

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. When Johnson stopped Wilson, she was responding to a call about a driver who had crashed a car and was possibly driving while intoxicated. What she observed as she approached the car confirmed those suspicions. The symptoms listed on the citation are easily attributable to intoxication, drug use, recent involvement in a car accident, or all of the above. Nothing in the report shows that Johnson *actually knew* Wilson's symptoms were instead the result of a stroke.

Even when construing all the facts in Wilson's favor, as the Court is required to do, there is no evidence showing that Johnson was subjectively aware of the risk or had a culpable state of mind in failing to obtain medical treatment for him.[3] *See Farmer*, 511 U.S. at 837. His only attempt at doing so involves citing the descriptions of his symptoms contained in the citation and his later deposition testimony that he told Johnson his "whole left side was dead" and that his "left arm was not working." [R. 57 at 5-6 (citing R. 57-1 (Uniform Citation) and R. 57-2 (Wilson Depo.) at 102.] As discussed above, the symptoms listed in the citation do not necessarily demonstrate that a reasonable lay person would have *objectively* known Wilson had a stroke – much less do they demonstrate that Johnson *subjectively* knew Wilson had suffered a stroke. All of the symptoms listed could equally have suggested that Wilson was driving under the influence of drugs or alcohol or had suffered a recent car accident. Additionally, when Johnson asked Wilson if he had taken medications, he told her he had taken "a lot" of them but could not remember what they were. [R. 57-2 (Wilson Depo.) at 100.] Johnson

---

[3] There is also no evidence that Wilson ever submitted a medical request form or even verbally requested medical assistance. Had he done so, and had an employee deliberately disregarded the request, that might show evidence of deliberate indifference, but Wilson has not even contended that he requested medical assistance for the numbness in his left side.

also discovered that Wilson was driving on a DUI suspended license. [R. 57-1.] These facts all support a reasonable assumption on Johnson's part that Wilson could have been driving under the influence rather than driving while having a stroke.

Wilson also claims that he told Johnson his left arm was not working and that his left side was dead. [R. 57 at 6.] According to Wilson, because Johnson did not respond to those statements by taking steps "to ensure that [he] received even basic medical treatment or assessment," Johnson must have been subjectively aware of a risk of serious injury to Wilson yet ignored his medical needs. [*Id*.] Wilson contends that this testimony creates a factual dispute concerning whether Johnson was subjectively and deliberately indifferent to his medical condition. [*Id.*] First, as a point of clarification, Johnson does not appear to dispute that Wilson told her about his left side and arm. Her reply brief does not contest his testimony – rather, Johnson contends that Wilson has not presented any evidence that Johnson drew any conclusions from what he told her other than the supposition that Wilson had been in a car accident and was likely under the influence of drugs or alcohol. Second, while the Court acknowledges that issues of credibility are generally left to a jury, *see Anderson*, 477 U.S. at 255, even if Wilson's testimony concerning what he said to Johnson is completely accurate, no reasonable jury could find that those statements alone establish Johnson's subjective awareness of Wilson's condition such that Johnson had a culpable state of mind and was deliberately indifferent to his needs. This conclusion is further buttressed by the following facts: Wilson testified that when Johnson stopped him, he was not in any pain and he did not request medical attention. [R. 57-2 at 102.] Johnson took Wilson to a hospital before taking him to the detention center, but Wilson did not request medical treatment at the

11

hospital either. Wilson claims he told the medical personnel at the hospital that he could not feel his left arm, but apparently they did not suspect that Wilson had suffered a stroke even while taking blood from his left arm. [R. 57-2 at 118-20.] Even Wilson acknowledged that he did not feel like he needed medical attention at the time of his arrest. [R. 57-2 at 122.] If neither Wilson nor trained medical professionals suspected that the deadness in his left arm was indicative of a recent stroke, then it would be hard for a jury to conclude that Trooper Johnson *subjectively knew* Wilson had suffered a stroke and refused to obtain treatment for him in the full knowledge that her choice could result in serious injury to Wilson. Thus, even if all the facts alleged in Wilson's deposition testimony are taken as true, they still do not support a claim of deliberate indifference sufficient to survive summary judgment.[4]

Apart from evidence of deliberate wrongdoing, Wilson cannot meet his burden of establishing that his constitutional rights were violated. Accordingly, under the standard for qualified immunity laid out in *Saucier v. Katz*, and modified by *Pearson v. Callahan*, Johnson is entitled to qualified immunity because although a right to adequate medical treatment is a clearly established right under the Fourteenth Amendment, the facts alleged do not establish that Johnson violated that right. *Pearson*, 555 U.S. at 236; *Saucier*, 533 U.S. at 201. Because Wilson has not presented facts sufficient to create a triable issue of material fact concerning whether Johnson violated his Fourteenth Amendment rights, Johnson must be granted summary judgment.

---

[4] While perhaps these facts could be relevant to a simple negligence claim, those claims have already been dismissed and are barred by qualified immunity.

**III**

Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Deliberate indifference requires that the defendant actually knew of and disregarded a substantial risk of serious harm to the inmate's health and safety. *Id.* at 835-37. Here, Wilson has not alleged facts which, even if true, would support a reasonable conclusion that Johnson was either aware of facts from which she could draw the inference that a substantial risk of serious harm existed, or that she actually drew that inference. *See id*. at 837. Therefore, because a reasonable jury could not find, under the facts alleged, that Johnson violated Wilson's constitutional rights, Johnson is entitled to qualified immunity as to Wilson's claims.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) Defendant Jennifer Johnson's construed Motion for Summary Judgment [**R. 43**] is **GRANTED**;

(2) The Final Pretrial Conference scheduled for **June 24, 2014**, and the jury trial scheduled for **July 8, 2014**, are hereby **CANCELLED**; and

(3) The Court will enter an appropriate judgment contemporaneously herewith.

This 20th day of May, 2014.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge